In the Matter of the Contested Case of CRESTVIEW MANOR, INC., Cannon Falls Manor Nursing Home, McIntosh Nursing Home, Inc., and Pelican Lake Nursing Home.

No. C1–84–1554.

Court of Appeals of Minnesota.

April 9, 1985.

Review Denied June 24, 1985.

Broeker & Grant, Samuel D. Orbovich, Bloomington, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Gary A. VanCleve, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by POPO-VICH, C.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

NIERENGARTEN, Judge.

Relators, four commonly-owned Minnesota nursing homes, seek review pursuant to Minn.Stat. §§ 14.63–.69 and Minn.R.Civ.P. 115 of an order issued by the Commissioner of Human Services. In adopting the recommendations of an administrative law judge, the Commissioner affirmed the Department of Human Services' inclusion of certain costs in top management compensation under Minn.R. 9510.0340, subpt. 2 (1983). We affirm.

## FACTS

Relators Crestview Manor, Cannon Falls Manor, McIntosh Nursing Home and Pelican Lake Nursing Home are owned by the Odell family. The Odell Nursing Management Company oversees their management. Frances Odell (general supervision) and her sons Robert (personnel director), Roger (maintenance), and Ronald (purchasing prior to 1982) each received a salary for their respective job. Each of the Odells also served as a paid member of the board of directors. Almost from the inception of the management company, Robert has been its president and Frances its chairman of the board.

The nursing homes participate in Minnesota's medical assistance program for needy persons who can't afford the costs of the care which they require. Each of them filed cost reports for fiscal years ending March 31, 1980, 1981, and 1982. Under Minn.R. ch. 9510, prospective per diem rates are calculated based on historical cost with adjustments for projected or known cost increases and "unidentified cost increases." All nursing homes participating in the medical assistance program are required to submit annual cost reports. The Department auditors may adjust the reports during a desk audit which may be affirmed or modified in a subsequent field audit.

The Department made desk audit adjustments to the cost reports submitted in each of the years listed above. In each of the cost reports, the nursing homes included a portion of the salary paid by the management company to Robert Odell as the personnel director as an allowable cost. The Department's auditors refused to allow this cost by including Robert's salary in the top-management compensation limitation in Minn.R. 9510.0340, subpt. 2 (1983), which states:

> Top-management compensation limitation. Top-management compensation includes that of owners, administrators, president, chairman of the board, board members, or other individuals receiving compensation as executives but not performing duties of a department head. Compensation includes the costs of non-cash compensation such as residences, salaries, and deferred compensation except IRS qualified pension or profit-sharing plans. * * *

*Id.* The annual cost limitation is based on the average size of the nursing home. *Id.*

Rule 9510.0340, in general, sets forth reasonable cost criteria for general and administrative expenses in establishing a nursing home's rate. Subpart 2 limits the amount of compensation paid to top management personnel which may be claimed as an allowable cost in computing a per diem rate. The nursing homes appealed the adjustments, and the Department initiated a contested case proceeding pursuant to Minn. Stat. § 14.57 (1982).

The nursing homes argue that Robert Odell's compensation was for his duties as a personnel director, a non-top-management position. The Department, on the other hand, claims Robert's position is broader than that of personnel director—that he is president of Odell Nursing Management and he performed substantial top-management responsibilities and, therefore, his salary is properly characterized as top-management compensation. The latter position was adopted by the administrative law judge and affirmed by the Commissioner in a final order issued on August 1, 1984. The nursing homes appealed.

## ISSUES

1. Did the Department of Human Services properly include Robert Odell's salary as personnel director in the top-management limitation of Minn.R. 9510.0340, subpt. 2, because he performed substantial executive duties?

2. Did the record support the Department's finding that Robert Odell performed substantial executive or top-management duties?

3. Did the administrative law judge err in dismissing relators' arguments concerning procedural irregularities and the Department's alleged change in position on top-management issue?

## ANALYSIS

### I

The Department has consistently not included the salaries paid to personnel directors of nursing homes, if necessary and reasonable, in the top-management compensation limitation of Rule 9510.0340. It is not disputed that Robert performed his duties as a personnel director during the three fiscal years at issue in this case.

The administrative law judge, however, found that, while Robert did perform some of the duties of a personnel director, he also had substantial executive duties as president. Based on these findings and our recent decision in *Richview Nursing Home v. Minnesota Department of Public Welfare*, 354 N.W.2d 445 (Minn.Ct.App. 1984), *pet. for rev. denied*, (Minn. Oct. 30, 1984), the administrative law judge concluded that the compensation paid to Robert cannot be allocated between his duties as a chief executive officer and his duties as a personnel director. Accordingly, his entire compensation is subject to the top-management compensation limitation. In affirming this conclusion, the Commissioner stated in an incorporated memorandum:

It must be emphasized that *the limitation applies only to the compensation paid to individuals performing substantial executive duties.* It does not apply to compensation of owners, family members, or board members who work in non-top management jobs with nominal executive responsibilities. For example, the Department has not sought to limit reimbursement for the compensation received by board members and family members Roger and Ronald Odell for their non-top management jobs as maintenance and supervisor and purchasing agent, because they did not appear to perform substantial executive duties.

(Emphasis added).

In *Richview*, the Department included all of the management company's vice president's salary as top-management compensation. The hearing examiner found that his financial duties (non-top management) took approximately 48.7 percent of his time while his executive duties (top management) comprised 51.3 percent of his time. Accordingly, the examiner recommended that the vice-president's salary be allocated, thereby allowing 49 percent of the salary as an allowable cost not subject to the

top management limitation. The Commissioner reversed, holding the salary of a top management employee cannot be allocated between the duties performed as top management and other duties. *See Richview*, 354 N.W.2d at 452. In upholding the Commissioner's decision, this court stated:

> There is no provision in [Rule 9510] which states that the duties of a vice president, for example, can be further allocated between those subject to the limitation and those not subject to the limitation. If [the Department] began to allocate the duties of a vice president between those subject to the top management compensation limitation and those not subject to the limitation, they in effect would be improperly promulgating a new rule which they may not do. * * *

*Id.* at 453. The Commissioner, in *Richview*, stated the intent underlying the top management compensation rule is to allow for prudent administration and the elimination of abuse in determining salaries of top-management personnel. The Department has a limited ability to actually determine what part of working time an executive spends performing different duties.

■ Robert Odell is both president and personnel director of Odell Nursing Management. As in *Richview*, the nursing homes are attempting to allocate Robert's salary between non-top-management and top-management duties. They attempt to distinguish *Richview* by arguing that the vice president in *Richview* held only one job with one job title while Robert Odell performed multiple duties under two job headings. They contend, therefore, that the Department has no reason to allocate since the salary for each position is already established. We do not agree.

The outcome in *Richview* would not have been any different if the vice president also carried the title of financial officer. The potential abuses in both cases are the same: there is an incentive for a facility to misallocate compensation between the non-top-management and top-management duties. The Department's ability to investigate job allocations is limited in either case.

The nursing homes seem to suggest that the Department should be bound by their allocation. This, however, would give them a free reign in establishing what is a top-management versus a non-top-management cost.

■ The nursing homes also argue the Department failed to justify its departure from past practice in treating Robert's personnel director salary as top-management compensation. The Department distinguishes between the situation where salary is paid to an individual who is exclusively a personnel director and the situation here where that same individual is also a president with substantial executive duties. The Department proved that there was a significant factual distinction between Odell's situation and past precedent and justified its treatment of Odell's entire compensation as top management. *See Peoples Natural Gas Co. v. Minnesota Public Utilities Commission*, 342 N.W.2d 348, 353 (Minn.Ct.App.1983) (although an agency is not bound by its own precedent, it must either conform to its prior decisions or explain the reason for its departure from such precedent), *pet. for rev. denied*, (Minn. April 24, 1984).

II

■ The Department found that Robert Odell performed the duties of a personnel director and, in addition, substantial executive duties. Relators claim the evidence does not support the finding that Odell's executive duties were substantial.

It is not disputed that Odell performed functions which are normally the duties of a personnel director. His salary was included in the top-management limitation only because he performed substantial executive duties outside the personnel area. The record supports the Commissioner's decision.

Robert Odell supervised and directed the activities of several of the administrators in the nursing homes and many of the administrators looked to him as their immediate supervisor. He also hired the administra-

tors for each of the four homes. In comparison, personnel directors in state nursing homes report to the administrators and serve as liaisons between the employees and administrators. Robert Odell's job description stated that he was to serve as liaison between administration and management.' Furthermore, Robert Odell was the primary person involved in union negotiations and in hiring department heads.

Robert Odell's responsibilities and executive powers were at least coextensive with those of Frances. In the normal course of his duties he signed contracts on behalf of the management company, handled most of the management company's daily correspondence, signed notes on behalf of the management company and consulted with service vendors, architects, accountants, attorneys, management consultants, labor consultants and contractors. He also represented management in collective bargaining negotiations. In general, he assumed many of the duties typical of the president or chief executive officer of the management company and the various nursing homes.

### III

 The nursing homes claim the Department is guilty of certain procedural irregularities which resulted in an unfair audit. First, they claim the Department failed to give a "detailed statement of the reason for any difference between the rate requested by the provider and the rate determined" as required by Minn.R. 9510.-0050 (1983). This requirement enables a provider to understand the nature of the adjustment and what provisions of Rule 9510 were relied upon. The field auditor felt such notice was unnecessary in this case.

The nursing homes have not shown that they were actually prejudiced by the Department's failure to give an explanation concerning the personnel director's salary adjustment. The auditors in this case have consistently included Robert Odell's salary as personnel director in the top-management limitation since fiscal year 1980.

Second, the nursing homes argue the Department adopted a new position after the hearing before the administrative law judge. We disagree. The Department's position consistently has been that Robert Odell's total compensation must be allocated to the top-management limitation because he performs substantial executive duties as a president, board member or personnel director.

### DECISION

The Department of Human Services properly included Robert Odell's salary as personnel director in the top-management limitation of Minn.R. 9510.0340, subpt. 2.

The Department's finding that Robert Odell performed substantial executive or top-management duties is supported by the evidence.

Affirmed.